UNITED STATES DISTRICT COURT  JS - 6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 12-10064 MMM (PJWx) | Date | March 13, 2013 |

| Title | *Hale v. Bank of America, N.A., et al.* |

| Present: The Honorable | MARGARET M. MORROW |

| ANEL HUERTA | N/A |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** Order Remanding Case to State Court

On February 15, 2013, the court issued an order to show cause why this case should not be remanded to state court.[1] Defendant Bank of America, N.A. responded on February 25, 2013.[2] Plaintiff Besthines Hale filed a response on March 4, 2013.[3] For the reasons below, the court finds that it lacks jurisdiction over this matter and remands it to Los Angeles Superior Court.

### I. FACTUAL BACKGROUND

On October 5, 2012, plaintiff commenced this action in state court against Bank of

---

[1]Order to Show Cause, Docket No. 8 (Feb. 15, 2013).

[2]Response to Order to Show Cause ("Response"), Docket No. 12 (Feb. 25, 2013).

[3]Plaintiff's Response to Order to Show Cause ("Hale Response"), Docket No. 14 (March 4, 2013).

America, N.A. ("BofA") and Raymond Cervantez ("Cervantez").[4] On November 26, 2012, BofA removed the action to this court, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[5] Plaintiff is a citizen of California.[6] BofA is a federally chartered national banking association formed and existing under the laws of the United States, with headquarters located in North Carolina; it is therefore is a citizen of North Carolina for diversity purposes.[7] See *Mireles v. Wells Fargo Bank, N.A.*, 845 F.Supp.2d 1034, 1061 (C.D. Cal. 2012) (recognizing that a national banking association is a citizen of the state in which its main office is located). The complaint does not plead Cervantez's citizenship, although BofA's notice of removal indicates he is a California resident.[8]

BofA or its predecessor hired plaintiff as a senior personal banker in approximately February 1984.[9] Plaintiff, a black female, was assigned to Westwood Village Branch 99.[10] Cervantez was the manager of that branch during the relevant period.[11] On or about May 22, 2009, plaintiff appears to have either (1) reported concerns about race discrimination and sexual favoritism in the branch to Cervantez, or (2) "reported up" regarding a prior complaint to Cervantez.[12] Plaintiff asserts that no action was taken to investigate or address her concerns,[13] and that defendants retaliated against her over a period of several months, culminating in her termination.[14] Plaintiff filed one or more formal complaints with the Department of Fair Employment and Housing and the Equal Employment Opportunity Commission.[15] Upon termination, she called the bank's Compliance division, which

---

[4] Notice of Removal, Docket No. 1 (November 26, 2012).

[5] *Id.*

[6] *Id.*, ¶ 12.

[7] *Id.*

[8] *Id.*, ¶ 14.

[9] Complaint, Docket No. 1 (Oct. 5, 2012), ¶ 16.

[10] *Id.*, ¶¶ 2, 16.

[11] *Id.*, ¶ 18.

[12] *Id.*

[13] *Id.*, ¶ 19.

[14] *Id.*, ¶¶ 22, 24.

[15] *Id.*, ¶¶ 30, 35-36.

purportedly informed her that pursuant to company policy, "at no time should an employee be fired for no cause or for race[,] creed or color."[16]

Plaintiff alleges that Cervantez engaged in persistent harassment and discriminatory behavior.[17] She contends that since Cervantez became manager of the banking center, all promotions but one have gone to employees of Hispanic descent.[18] The one non-Hispanic promoted was purportedly part of Cervantez's "party group."[19] Plaintiff asserts that defendants took no action to address these issues, despite her repeated efforts to report them.[20] Instead, plaintiff contends, Cervantez retaliated by engaging in more outrageous behavior, and eventually by terminating her. Cervantez purportedly harassed plaintiff verbally on numerous occasions, yelling at her publicly about allegedly pretextual concerns with her work.[21] Plaintiff contends that he "verbally assaulted [her] by screaming at, berating and humiliating [her] while accusing [her] of not being able to do her job" in front of customers and another superior.[22] He purportedly cut hours plaintiff had worked from her pay, with no explanation.[23] On several occasions, Cervantez allegedly approached plaintiff when no one else was present,[24] prompting her to write a letter stating that she was afraid to be alone with him.[25] Furthermore, Cervantez allegedly contacted other employees at their homes in an attempt to solicit negative reviews about plaintiff.[26] Plaintiff contends that an investigation of her complaints concluded that

---

[16]*Id.*, ¶ 21.

[17]*Id.*, ¶ 24.

[18]Declaration of Besthines Maria Hale ("Hale Decl."), Docket No. 1 (Oct. 5, 2012), at 10.

[19]*Id.*

[20]Complaint, ¶ 40.

[21]*Id.*, ¶ 37.

[22]*Id.*

[23]*Id.*, ¶ 51.

[24]It appears plaintiff alleges that Cervantez approached her outside work, and perhaps at her home: "[Cervantez] came to the Plaintiff's [sic] on two separate occasions when no one else was present with different letters." (Complaint, ¶ 42).

[25]*Id.*, ¶ 42.

[26]*Id.*, ¶ 49.

Cervantez and/or BofA were out of compliance with federal and state law.[27]

Plaintiff pleads claims for (1) employment discrimination based on national origin, age, sex, race, or color in violation of the California Fair Employment and Housing Act ("FEHA"), Government Code § 12940; (2) harassment in violation of FEHA; (3) retaliation in violation of FEHA; and (4) intentional infliction of emotional distress ("IIED").[28] The harassment and IIED claims are asserted against all defendants while the remaining claims are against BofA only.

## II. DISCUSSION

### A. Legal Standards Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court involves a federal question or is between citizens of different states and has an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

---

[27] *Id.*, ¶ 39.

[28] *Id.* at 1.

### B.     Whether this Case Was Properly Removed under 28 U.S.C. § 1332

BofA contends that the court has diversity jurisdiction to hear this action under 28 U.S.C. § 1332.[29]  "[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . ."). Federal courts have jurisdiction only where there is complete diversity: the plaintiff's citizenship must be diverse from that of each named defendant.  28 U.S.C. §§ 1332(a)(1), 1332(c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.) ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant," citing *Lewis*, 519 U.S. at 68).

#### 1.     Amount in Controversy

The "amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000).  Here, the complaint prays for $1,500,000 in damages,[30] an amount that far exceeds the jurisdictional minimum.

#### 2.     Complete Diversity

As noted, plaintiff has sued her former employer, BofA, and her former supervisor, Cervantez.  If both plaintiff and Cervantez are California citizens,[31] the complete diversity

---

[29]Removal at 1.

[30]Complaint at 20.

[31]Neither plaintiff nor defendant BofA alleges Cervantez's citizenship.  BofA pleads only that he is a California resident.  (Removal, ¶ 14).  There is a difference between citizenship and residency.  See *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  An allegation of residency is insufficient to show there is diversity of citizenship for purposes of § 1332.  *Baldwin v. Monier Lifetile, L.L.C.*, No. CIV-05-1058 PHXJAT, 2005 WL 3334344, *2 (D. Ariz. Dec. 7, 2005).  The complaint contains no allegations regarding Cervantez's residence or citizenship.  It is evident, however, that Cervantez has worked at the Westwood, Los Angeles Bank of America branch since at least January 2008, and probably longer.  (Hale Decl. at 1).  It is likely, therefore, that he is a California citizen.  This conclusion is reinforced by the fact that defendants contend he was fraudulently joined.  If Cervantez were not a California citizen, there would be no need to allege fraudulent joinder. Additionally, the allegation of fraudulent joinder means that the court must first determine

required by § 1332 does not exist. See *Matheson*, 319 F.3d at 1090. Defendants argue, however, that Cervantez was fraudulently joined to defeat diversity jurisdiction.[32] The court examines this contention below.

### C. Legal Standard Governing Fraudulent Joinder

"It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d at 1193 & n. 1; *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987)); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship may be disregarded, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe*, 811 F.2d at 1339).

"Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)). Thus, "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand." *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant"). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys.*, Inc., 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001); see also *Davis v. Prentiss Properties Ltd., Inc.*, 66 F.Supp.2d 1112, 1115 (suggesting that for fraudulent joinder to exist, a claim would have to be so frivolous as to also violate F.R.C.P. 11(b), meriting possible sanctions).

The defendant "must have the opportunity to prove that individuals joined in the action

---

whether Cervantez is a proper party before concluding that the lack of any allegation concerning his citizenship leaves the court without jurisdiction. See *Kanter*, 265 F.3d at 857-58.

[32]Removal, ¶ 5.

6

cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; see also *McCabe*, 811 F.2d at 1339 (stating that the removing defendant is entitled to present facts showing that the joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant"). "[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence); James W. M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008) ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

### D. Whether There Is a "Non-Fanciful" Possibility That Plaintiff's Complaint States a Harassment Claim Against Cervantez

To determine whether Cervantez has been fraudulently joined, the court must evaluate whether defendants have shown by clear and convincing evidence that plaintiff has failed to state a claim against Cervantez and the failure is obvious under state law. Harassment under section 7287.6 of the California Code of Regulations is defined as, but is not limited to, verbal harassment (e.g., epithets or slurs), physical harassment (e.g., assault or any physical interference with normal work or movement), visual harassment (e.g., derogatory posters or drawings), and requests for sexual favors. Harassment does not include reasonable discipline. To state a FEHA harassment claim, an employee must allege facts showing that workplace harassment was "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees." *Hughes v. Pair*, 46 Cal.4th 1035, 1043 (2009) (quoting *Miller v. Department of Corrections*, 36 Cal.4th 446, 462 (2005)). FEHA harassment claims can be brought against individuals. CAL. GOV'T. CODE § 12940(i)-(j).

Plaintiff alleges that, during her employment with BofA, Cervantez subjected her to repeated acts of harassment.[33] She asserts that the harassment was motivated by discriminatory and retaliatory animus.[34] Examples of harassment that plaintiff provides in the complaint

---

[33]Complaint, ¶¶ 25-51.

[34]*Id.*, ¶ 30.

7

include: retaliating against plaintiff for expressing concerns about discrimination;[35] publicly berating her;[36] improperly deducting hours for which she was entitled to be paid;[37] soliciting negative reports about plaintiff from co-workers;[38] approaching plaintiff under circumstances causing her to feel unsafe;[39] and disciplining and terminating plaintiff for pretextual reasons.[40]

Citing *Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998), BofA argued in its notice of removal that "[a]ll of the incidents described [by plaintiff] are simply 'actions of a type necessary to carry out the duties of business and personnel management.'"[41] BofA has reasserted this contention in its response to the court's February 15, 2013 order to show cause.[42] The court remains convinced that BofA's assertion is incorrect. First, depending on context, many of Cervantez's alleged actions reach far beyond typical personnel management decisions. Plaintiff contends, for example, that Cervantez called her colleagues at their homes to solicit negative statements about her,[43] withheld technology and perks given to similarly-situated employees,[44] and made disparaging comments about plaintiff's use of language.[45] The court must, at this stage, consider plaintiff's facts and allegations in the light most favorable to her. Considered in that light, the allegations would support a finding that at least some of the actions purportedly taken were not strictly personnel management decisions. *Dagley v. Target Corp., Inc.*, No. CV-09-1330 VBF (AGRx), 2009 WL 910558, *3 (C.D. Cal. Mar. 31, 2009) (holding that "if a plaintiff 'alleges conduct other than that inherent in terminating an employee', such as violating a 'fundamental interest of the employee . . . in a deceptive manner that results in the plaintiff being denied rights granted to other employees,'" then the plaintiff has alleged behavior beyond "a simple pleading of personnel management activity,"

---

[35]*Id.*, ¶ 24.

[36]*Id.*, ¶¶ 25, 37.

[37]*Id.*, ¶ 51.

[38]*Id.*, ¶ 49.

[39]*Id.*, ¶ 42.

[40]*Id.*, ¶¶ 22-34.

[41]Removal, ¶ 17.

[42]Response at 3-4.

[43]Complaint, ¶ 49.

[44]Hale Decl. at 2.

[45]Complaint, ¶ 34.

quoting *Gibson v. American Airlines*, No. C 96-1444 FMS, 1996 WL 329632, *4 (N.D. Cal. June 6, 1996)). At this time, therefore, the court cannot say that there is *no possibility* that plaintiff has stated a harassment claim against Cervantez.

Second, as the California Supreme Court has stated, "acts of discrimination can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 709 (2009). In *Roby*, the plaintiff's supervisor made negative comments to plaintiff about her body odor, ostracized her in the office, expressed disapproval when she took rest breaks, and overlooked her when handing out small gifts to other employees. He also disciplined the plaintiff over repeated absences, which were due to a medical condition, and ultimately terminated her employment. *Id.* at 695. A jury found in plaintiff's favor on her FEHA harassment claim. *Id.* at 692. The Court of Appeal reversed, reasoning – as BofA does in this case – that personnel decisions cannot constitute harassment. *Id.* at 700. It thus disregarded every act that could be characterized as a personnel decision. *Id.* The California Supreme Court reversed, holding that the Court of Appeal had improperly excluded discriminatory personnel decisions in examining plaintiff's harassment claim. *Id.* at 709.

In its response, BofA correctly points out that the *Roby* Court did not overturn its earlier holding in *Reno* that commonly necessary personnel decisions cannot be considered harassment.[46] BofA is incorrect, however, in assuming that that fact undermines the analysis set forth in the court's February 15, 2013 order to show cause. First, as stated, based on the allegations the plaintiff has made, the court cannot conclude with certainty that every one of Cervantez's purported actions was a "personnel management decision" as that term is used in *Reno*. Second, as the court made clear, under the California Supreme Court's holding in *Roby*, plaintiff's allegations of harassment, coupled with corresponding allegations of discrimination, may suffice to state a harassment claim against Cervantez. Like the supervisor in *Roby*, Cervantez is alleged to have publicly ostracized plaintiff,[47] withheld items he gave to other employees,[48] and harshly reprimanded her for absences. By contrast, he purportedly allowed other employees to miss work without criticizing them.[49] Furthermore, like the plaintiff in *Roby,* plaintiff asserts that Cervantez's personnel decisions were motivated by

---

[46]Response at 4.

[47]Complaint, ¶ 37.

[48]Hale Decl. at 2.

[49]*Id.* at 9-10.

discrimination.[50]  Taken as true, plaintiff's allegations of widespread discrimination support an inference that Cervantez's actions were motivated by discriminatory animus, and thus that a hostile work environment existed.  It appears likely, therefore, that plaintiff has pleaded a harassment claim against Cervantez.

Moreover, even if plaintiff has not alleged facts sufficient to state a harassment claim against Cervantez, BofA has not established that she cannot amend the pleading to state a viable harassment claim.  See *Padilla v. AT & T Corp.*, 697 F.Supp.2d 1156, 1159-60 (C.D. Cal. 2009) ("[Defendant] was Plaintiff's direct supervisor at AT & T, and whether she did so in good or bad faith, it is clear that Hinojosa played an integral role in Plaintiff's termination. A defendant is not a fraudulently joined or sham defendant simply because the facts and law may further develop in a way that convinces the plaintiff to drop that defendant, and this Court cannot find that [defendant] is a fraudulently joined or sham defendant. . . .  Denying federal diversity jurisdiction in this case, where Plaintiff seeks to include her direct supervisor in a lawsuit relating to her termination, is consistent with the Founders' intent in establishing diversity jurisdiction").  Here, like the plaintiff's supervisor in *Padilla,* Cervantez played an integral role in plaintiff's termination.  BofA does not address the possible sufficiency of a future amended complaint; instead, it asserts that plaintiff has failed adequately to state a harassment claim in her current complaint.  Thus, "the complaint's shortcomings, if any, are strictly factual."  *Stanbrough v. Georgia-Pacific Gypsum LLC, et al.*, No. CV-08-08303 GAF (AJWx), 2009 WL 137036, *2 (C.D. Cal. Jan. 20, 2009); *Burris v. AT&T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006) ("Although as currently ple[d], Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not demonstrated that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency. Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").

BofA contends that "the legitimacy of the removal must be decided based solely on the claims actually pleaded in the Complaint and not based on the types of claims that could or might be pleaded or proven in the future."[51]  The court does not disagree.[52]  Whether or not plaintiff might be afforded leave to amend to add new claims is not a factor in the court's analysis.  What is important, rather, is that BofA has not shown that plaintiff could not amend

---

[50]*Id.*

[51]Response at 2:18-23.

[52]Only BofA has considered such claims.  In its response to the court's order to show cause, BofA cites authority for the proposition that individual supervisors cannot be held liable for discrimination or retaliation.  (Response at 4).  The court has not considered such claims; it has evaluated only plaintiff's stated claims for harassment and IIED.

the *factual* allegations in the complaint to state a viable harassment claim.

Accordingly, the court concludes that BofA has failed to demonstrate by clear and convincing evidence that plaintiff cannot possibly state a harassment claim against Cervantez. As a result, Cervantez's joinder is proper, and complete diversity is lacking.

### E.  Whether There Is a "Non-Fanciful" Possibility That Plaintiff's Complaint States an Intentional Infliction of Emotional Distress Claim Against Cervantez

Plaintiff also asserts a claim against Cervantez for intentional infliction of emotional distress ("IIED").[53] A plaintiff pleading an intentional infliction of emotional distress claim must allege (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard for the probability of causing, emotional distress; (2) that plaintiff suffered severe or extreme emotional distress; and (3) that the outrageous conduct actually and proximately caused the distress. *Conley v. Roman Catholic Archbishop of San Francisco*, 85 Cal.App.4th 1126, 1133 (2000) (citing *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979)) ("The elements of a prima facie case of intentional infliction of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) [the] suffering of severe or extreme emotional distress by plaintiff; and (3) [a finding that] plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct"); *Wilkens v. National Broadcasting Co.*, 71 Cal.App.4th 1066, 1087 (1999) (same); *Symonds v. Mercury Savings and Loan Ass'n*, 225 Cal.App.3d 1458, 1468 (1990) (same). The defendant's conduct "must . . . be directed at the plaintiff or [take place] in the presence of the plaintiff." *Smith v. Pust*, 19 Cal.App.4th 263, 274 (1993). Generally, "conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Cochran v. Cochran*, 65 Cal.App.4th 488, 494 (1998).

The complaint alleges that Cervantez's conduct was "intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress"[54] and that the conduct did, in fact, cause plaintiff to suffer extreme emotional distress.[55] The conduct Cervantez allegedly directed at plaintiff includes: deducting hours from her pay for no reason;[56] "screaming at, berating, and humiliating [her] . . . in front of [her] Administrative

---

[53] Complaint, ¶¶ 93-110.

[54] *Id.*, ¶ 96.

[55] *Id.*, ¶ 106.

[56] Complaint, ¶ 51.

Assistant[,] person[nel] and the general public";[57] referring to her language as "gibberish";[58] calling her co-workers' homes to solicit negative statements about her;[59] and discriminating against her based on race.[60] BofA offers three principal arguments as to why plaintiff's IIED claim against Cervantez is not viable. First, it argues – as it does with respect to the harassment claim – that Cervantez's actions are personnel management decisions that as a matter of law cannot support an IIED claim.[61] Second, it argues that none of the specific acts is sufficiently "extreme and outrageous."[62] Finally, it argues that the IIED claim is barred by the exclusivity provision of the Workers' Compensation Act ("WCA").[63] The court examines these contentions in turn.

BofA is correct that pure personnel management decision will not support an IIED claim.[64] "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996). Personnel activity includes "actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who will be laid off." *Id.* at 64-65. "[A] claim of intentional infliction of emotional distress [can be asserted, however,] '[w]here the behavior goes beyond the act of termination'" or other management activity. *Dagley*, 2009 WL 910558 at *3 2009) (quoting *Gibson*, 1996 WL 329632 at *4); see also *Graves v. Johnson Control World Services, Inc.*, No. C-05-1772 SC, 2006 WL 618796 *11 (N.D. Cal. Mar. 13, 2006) ("In response, Johnson Control argues that Graves cannot prevail on this cause of action because, as a matter of law, personnel management decisions are not 'outrageous conduct beyond the bounds of human decency.' . . . The court in *Janken* . . . note[d] that the remedy for personnel management decisions, even where improperly motivated, is 'a suit against the employer for discrimination.' . . . However, Defendant overstates the reach of the Court's decision in

---

[57]*Id.*, ¶ 37.

[58]*Id.*, ¶ 34.

[59]*Id.*, ¶ 49.

[60]*Id.*, ¶¶ 30, 36, 58; Hale Decl. at 9-10.

[61]Response at 8.

[62]*Id.* at 11-12.

[63]*Id.* at 8-10.

[64]Id. at 8.

12

*Janken* to the extent that it argues that any decision affecting personnel management is not actionable under an intentional infliction of emotional distress theory, no matter what the motivation. . . . That proposition is far too broad for the *Janken* decision to bear, and, in fact, courts considering intentional infliction of emotional distress claims have clearly ruled that such claims can be brought where the 'distress is engendered by an employer's illegal discriminatory practices,'" citing *Accardi v. Superior Court*, 17 Cal.App.4th 341, 353 (1993), and *Hamilton v. Signature Flight Support Corp.*, No. C-05-049, 2005 WL 1514127, *7 (N.D. Cal. June 21, 2005)).

To the extent, therefore, that BofA contends Cervantez's conduct cannot support an IIED claim simply because it involves personnel decisions, it continues to overlook the case law to the contrary.[65] Plaintiff's complaint states explicitly that "[t]he fact that Plaintiff is a black female was a substantial factor in the Defendant's decision and actions."[66] This allegation puts the case squarely within the authority cited in *Graves*, cases in which courts "clearly ruled that [IIED claims against an individual superior] can be brought where the 'distress is engendered by an employer's illegal discriminatory practices.'" 2006 WL 618796 at *11. See also *Barsell v. Urban Outfitters, Inc.*, No. 09-2604 MMM (RZx), 2009 WL 1916495, *4 (C.D. Cal. July 1, 2009) ("Because this claim [for IIED] is based on allegations of disability discrimination, there is a non-fanciful possibility" that plaintiff can state a claim against her supervisor); *Murray v. Oceanside Unified School Dist.*, 79 Cal.App.4th 1338, 1362 (2000) (stating, in a case involving discrimination based on sexual orientation, that "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices").

As respects BofA's contention that Cervantez's conduct was not sufficiently extreme or outrageous, the court reiterates that "[w]hether . . . alleged behavior is sufficiently extreme as to constitute 'outrageous' behavior is properly determined by the fact finder after trial or possibly after discovery upon a motion for summary judgment." *Angie M. v. Superior Court*, 37 Cal.App.4th 1217, 1226 (1995). Thus, in other cases in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an intentional infliction of emotional distress claim, district courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of liability, even where plaintiff's claim appeared "relatively weak." See, e.g., *Asurmendi v. Tyco Electronics Corp.*, No. C 08-5699 JF (PVT), 2009 WL 650386, *5 (N.D. Cal. Mar. 11, 2009). District courts have also granted motions to remand where a complaint failed to allege outrageous conduct, because it was possible that plaintiff could cure the deficiency by amendment. See *Burris,* 2006 WL 2038040

---

[65]The court also refers BofA to its analysis in the preceding section on harassment. It is by no means certain that every activity alleged in the complaint was a purely "personnel management decision" within the legal meaning of that term.

[66]Complaint, ¶ 58.

at *2.

BofA finally contends that plaintiff's IIED claim is barred by the exclusivity provision of the WCA.[67] For the WCA to bar an IIED claim: (1) the employer's conduct must not contravene fundamental public policy; and (2) the employer's conduct must be within the normal risks of the employment relationship. *Livitsanos v. Superior Court*, 2 Cal.4th 744, 754-55 (1992) (if "the employer's conduct neither contravenes fundamental public policy nor exceeds the inherent risks of the employment," it is not actionable in a civil suit). BofA does not address the public policy issue; therefore, its WCA argument fails on its face to meet the considerable burden of persuasion required when asserting fraudulent joinder. Even more importantly, "[d]iscriminatory conduct exceeds the bounds of a normal employment relationship." *Gibson,* 1996 WL 329632 at *5. The *Gibson* court reasoned:

> "Plaintiff alleges that she was subject to discriminatory conduct as she was discriminated against for being a mother and was denied rights provided to other employees. Were plaintiff able to prove such discrimination, plaintiff's tort claims would not be barred by the exclusive remedy provisions of the Workers' Compensation Act. This possibility mandates that [defendant] be regarded as a legitimate defendant who must be considered for diversity purposes . . . . For the foregoing reasons, it is possible that plaintiff will recover against [defendant] for . . . intentional infliction of emotional distress. [Defendant] cannot therefore be treated as a "sham defendant." *Id.* at *5-6

See also *Accardi*, 17 Cal.App.4th at 347 ("[A] claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices"), disapproved on other grounds in *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798 (2001).

For these reasons, it is not implausible that plaintiff could state an IIED claim against Cervantez; the relevant state law is not so well settled that plaintiff "would not be afforded leave to amend [her] complaint to cure [any] purported deficiency." *Burris,* 2006 WL 2038040 at *2. The complaint alleges that Cervantez repeatedly approached plaintiff while no one else was present,[68] and that his conduct placed her in fear.[69] A jury could conclude that the fact that plaintiff reported this was sufficient to put Cervantez on notice that even if others would not have been distressed by his actions, she was. As a result, it might find that Cervantez knew his behavior was more likely to cause plaintiff to suffer anxiety and/or fear than another individual. See *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452,

---

[67]Response at 8-10.

[68]See fn. 21, supra at 3.

[69]Complaint, ¶ 42.

14

473 (2007) (quoting *McDaniel v. Gile*, 230 Cal.App.3d 363, 372 (1991) ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity")).

In sum, defendant has failed to meet its burden of proving fraudulent joinder. Accordingly, the court finds that Cervantez is a properly-joined defendant and that complete diversity is lacking.[70]

### III. CONCLUSION

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566. For the reasons stated, the defendant has failed to carry its burden of establishing that the court has subject matter jurisdiction to hear the action. As a consequence, the clerk is directed to remand the case to Los Angeles Superior Court forthwith.

---

[70]In her response to the court's order to show cause, plaintiff asks that the court refrain from remanding the action because she "intends to amend [her] complaint to add causes of action for violations of the Sarbanes-Oxley Act of 2002 and for violations of [ ] 42 U.S.C. § 1981." (Hale Response at 2). Plaintiff's intent to file an amended complaint containing federal causes of action is insufficient to confer jurisdiction. The deadline to amend her complaint as a matter of right has passed, and the court lacks jurisdiction to rule on a motion to amend the pleadings. Accordingly, plaintiff's request that the court retain jurisdiction cannot be granted.